# THE PEOPLE v. JENNIE M. SWETLAND.

## *Forgery—Discharge of mortgage—Evidence.*

1. Leaving a *forged* discharge of a mortgage collateral to notes, which it secures, in the proper office for record, is an uttering and publishing of an acquittance and discharge for *money*.

2. How. Stat. § 5685, making the record of conveyances, and other instruments authorized to be recorded, *prima facie* evidence, does not apply when the question of the forgery of the original instrument is in issue either in a criminal or civil suit.[1]

3. On the trial of a respondent for the alleged forgery of a discharge of a mortgage, the original instrument is the best evidence, and ought, if possible, to be produced.

4. When an alleged forged instrument is last shown in the hands of the person accused of forging or uttering it, secondary evidence may be given of its contents without notice to the accused to produce it.

5. It is the duty of the prosecuting attorney to furnish all the evidence within his power bearing upon the issue of guilt or innocence, in relation to the main issue, or to give some good excuse for not doing so.

   So *held*, where on a trial for uttering an alleged forged instrument the persons whose names purported to be affixed as witnesses were not produced, nor their names indorsed on the information, and no showing was made that the names were fictitious, and it is held that their testimony was a necessary part of the people's case, which cannot be omitted without good excuse.

6. The record of a mortgage, admitted to be genuine, for the forgery of a discharge of which a respondent is on trial, is admissible as evidence of the mortgage.

7. The fact that a person arrested for a crime may of his own accord tell the truth or a lie to screen himself or gain favor with the officers of the law does not prevent such statements from being used against him.

8. It is only where statements are drawn from a prisoner by some artifice, promise, or threat which induces the hope of benefit,

[1] See *Shelden v. Merrill*, 69 Mich. 156, holding that How. Stat. § 7504, does not apply in cases where the original. paper will not prove itself.

or acts upon his fears, or are made under compulsion, that the law precludes their being used as admissions. If they are free and voluntary, then the motive or intent of the accused in making such statements is not material, as regards their admission in evidence.

9. On the trial of a respondent for uttering a forged discharge of a mortgage, evidence of the execution of a mortgage upon part of the mortgaged premises a year after the date of the discharge; and of the presentation to the mortgagee of an abstract of title showing the discharge of the first mortgage, is competent as presenting a motive for the commission of the crime charged, and also tending to prove that the respondent knowingly uttered the forged discharge.

10. Where the *corpus delicti* depends entirely for its existence upon the acts and intent of the respondent, such acts and his admissions, if admisssible at all, are admissible at any stage of the proceedings upon the trial.

Exceptions before judgment from Kalamazoo. (Buck, J.)  Argued July 11, 1889.  Decided October 18, 1889.

Respondent was convicted of forgery. Conviction reversed and new trial granted. The facts are stated in the opinion.

*William Shakespeare* and *E. M. Irish,* for respondent.

*S. V. R. Trowbridge,* Attorney General, *George P. Hopkins,* Prosecuting Attorney, and *William G. Howard,* for the people.

[The points of counsel are fully stated in the opinion. —REPORTER.]

MORSE, J.  On July 25, 1885, the defendant bought of George W. Parker a piece of land in Kalamazoo county.  On the same day she executed a mortgage for $700 to him upon the said land.  The theory of the prosecution in this case, as developed on the trial, was that the respondent or some one else forged a discharge of this mortgage, and that she put it on rec-

ord, or caused it to be recorded, and afterwards used the abstract showing said mortgage to be discharged to effect two other loans,—one from D. T. Allen, and the other from Mrs. Amy E. Day.

The respondent was tried and convicted in the Kalamazoo circuit court for uttering this forged discharge. The case is brought here on exceptions before sentence. The respondent was charged with uttering and publishing—

"As true, a certain false, forged, and counterfeited acquittance and discharge for *money* of a certain real-estate mortgage,"—

And the alleged forged discharge is set out in full in the information.

It is contended that there was no evidence of uttering, as charged in the information. The evidence showed that either the respondent or her sister took the false discharge to the office of the register of deeds, and had it recorded, and took it away again. It is claimed that the mere taking of it to be recorded was not an uttering; that it certainly was not the uttering of it as an "acquittance and discharge for *money*." It is said the mortgage was collateral to the notes which represented the debt, and that these notes were still held by Parker, and the only effect of putting the discharge on record was to show the real estate apparently clear of the lien. There may be some ingenuity in this argument, but there is no merit in it. If this false discharge had been genuine, as it purported to be, it would have been an acquittance and discharge, not only of the lien upon the real estate, but of the notes as well, and would therefore have been an acquittance and discharge *for money*. It would have been the voucher or receipt for the payment of $700, the amount secured by the mortgage.

But we think error was committed upon the trial.

This discharge purported to be signed by George W. Parker, the mortgagee, and to have been acknowledged before James H. Kinnane, an attorney and notary public at Kalamazoo, and witnessed by C. W. Swetland and M. A. Hascall. Parker testified that he never signed any such discharge, and Kinnane was quite certain that he never took any such acknowledgment. The discharge itself was not produced, nor was its absence fully accounted for. The record of the instrument was produced by the register of deeds, Mr. Simmons. He could not remember who left it for record, or who took it away, except that either the respondent or her sister brought it to his office, and the same person that brought it took it away. When the record of the discharge was offered in evidence, it was objected to by the defense, on the ground that it was secondary evidence, and that it did not yet appear that the original instrument was lost, and no notice to produce it had been given.

Mr. Howard, of the prosecution, then said:

"If you prefer the original discharge, we ask you to produce it here in court."

*Mr. Irish* (for the defense). "We have received no notice to produce it."

*Mr. Howard.* "I give you notice now."

*Mr. Irish.* "We have nothing to say about the proposition, because it does not come in the proper form, or at the proper time."

The court declined to pass upon the question finally at that time, but admitted the record of the instrument, as he stated, *pro forma*. Upon other evidence being introduced, the record was permitted to stand in lieu of the original instrument.

The counsel for the people in this Court claim that this record, under the statutes of this State, was original evidence, and could be used as such, without reference to the original; that it was neither necessary to produce

the original false discharge, nor account for its loss. See How. Stat. § 5685. We do not think this statute applies when the question of the forgery of the original instrument is in issue either in a criminal or civil suit. When the main issue is whether a deed, mortgage, or discharge of mortgage has been forged, the original instrument is the best evidence, and ought to be produced, if it can be.

But it is further claimed by the counsel for the people that, if this be so, when the original discharge was traced into the hands of the respondent it was sufficient; that the instrument was then satisfactorily accounted for, and that no notice to produce it was necessary; that such a notice would be, in effect, compelling the respondent to give evidence against herself. We agree with counsel that when an instrument claimed to be forged is last shown in the hands of the person accused of forging or uttering it, then secondary evidence may be given of its contents, and without notice to the accused to produce it. But it never became by any means certain in this case that it was last in the hands of respondent. The proof showed it to be quite as likely in the hands of her sister as herself. No attempt appears to have been made to find the original instrument, or to secure the testimony of the sister, whose name does not appear in the record.

Another thing. It is the duty of the prosecuting attorney to furnish all the evidence within his power bearing upon the issue of guilt or innocence, in relation to the main issue, or to give some good excuse for not doing so. This rule has been frequently applied to the eye-witnesses of a transaction, unless the number were so great as to make the testimony merely cumulative. But in this case the main issue was whether or not this discharge was a false one,—a forgery. The uttering of it,

unless it were forged, could not be a crime. There were the names of four persons attached to this instrument, the alleged maker, Parker; the notary, Kinnane; and two witnesses, who were necessary, if it was a valid discharge and to be recorded, M. A. Hascall and O. W. Swetland. They were eye-witnesses of the execution of this paper, if it was genuine; they were all material witnesses as to its truth or falsity. Parker and Kinnane were sworn, but no mention is made in the record of the two witnesses save as their names appear upon the record of the discharge as being witnesses to its execution by Parker. Their names were not put upon the information, and there is no showing made why they were not called as witnesses. It is not claimed that these names are fictitious, and that no such persons are in existence, or do not live in Kalamazoo. It is very clear to my mind that, in the absence of this original discharge, it was the duty of the prosecuting attorney, under repeated decisions of this Court, to bring the four persons, and all of them, if they could be found, into court as witnesses in behalf of the people.

As this case stands upon the record before us, the falsity of this discharge rests entirely upon oral testimony, without the instrument itself, with which to test the genuineness or falsity of the signatures, or to aid the recollection of the witnesses. Parker, who is certainly interested financially in the issue, swears absolutely that he never made the paper. Kinnane thinks, and is almost certain, that he never took the purported acknowledgment, but he has taken too many acknowledgments, in too many different places, to swear positively that he did not take it. Simmons, the register of deeds, the only person sworn who testifies to having seen the original discharge, swears that he believes the acknowledgment to have been in the handwriting of Kinnane. Now, it will

readily be seen that the evidence of these two purported witnesses, Hascall and Swetland, becomes most important. If these persons exist, and can be found, the people and the respondent are both entitled to their testimony, and as a part of the direct evidence on behalf of the prosecution. Unless they are mere myths, or cannot be procured, the people could not well ask the jury to find beyond a reasonable doubt that this instrument was a forgery. If the names were fictitious, that fact alone would be strong, if not conclusive, evidence that the instrument was forged, and it appears strange that this was not shown, if it be true. If the persons named as witnesses exist, their names should be placed on the information before the next trial, and they must be produced on such trial, and sworn as witnesses on behalf of the people, if their attendance can be procured. Their testimony is a necessary part of the people's case, under the rules, and cannot be omitted without good excuse.

The record of the mortgage given by respondent to Parker was admitted in evidence against the objection of the counsel for respondent. There was no error in this. There was no question as to the genuineness of the instrument, and the record of it was authorized to be read in evidence under the statute. How. Stat. § 5685.

The original mortgage was afterwards introduced, for the apparent purpose of proving that it had never been paid. The notes accompanying the instrument—one for $200 and the other for $500—were also offered in evidence. Upon these notes indorsements of interest appeared as having been paid since the recording of the discharge. Mr. Parker was permitted to testify that this interest had been received by him from Mr. Coleman, to whom it was paid; Coleman having the notes and mortgage most of the time in his office. Coleman was not sworn. This evidence should not have been allowed to stand in the

case, unless supplemented by Coleman's testimony. It could have been used, and probably was, as a circumstance tending to show that the discharge was a false paper. And yet there was no evidence but this hearsay testimony of Parker that any interest had been paid on this mortgage by the respondent or any one in her behalf.

Frank E. Knappen, who was prosecuting attorney at the time respondent was arrested, testified to certain admissions made to him by her. His evidence was to the effect that the respondent came to him of her own accord, and voluntarily made her statement to him, without any inducement or hope being held out to her in any manner. The respondent gave testimony tending to show the contrary. The court very properly left this conflict of testimony with the jury, and instructed them that, in order to use or take into consideration the respondent's statement to Knappen, they must find beyond a reasonable doubt that the statement was purely voluntary, and—

"Made freely, of the respondent's free will, without any hope of favor or fear of the consequences."

This was certainly as favorable to the respondent as the law permits, if not more so. For if no inducements of any kind are held out by an officer to an accused person, nor any threats made, the accused may make a statement to such officer, hoping thereby to gain favor or escape punishment; but for that reason it will not be rejected, if it is voluntarily made, without any influence being exerted by the officer. The fact that a person arrested for a crime may of his own accord tell the truth or a lie to screen himself or gain favor with the officers of the law does not prevent his statements so made from being used against him. It is only when statements are drawn out by some artifice, promise, or threat which induces the hope of benefit, or acts upon the fears of the

accused, or made under compulsion, that the law precludes their being used as admissions. If they are free and voluntary, without the influence of threats or promises, artifices or duress, then the motive or intent of the accused in making the statements is not material, as regards the question of their admissibility in evidence. The court also instructed the jury that the burden of proof was upon the people to show the statements to have been voluntary.

The testimony of D. T. Allen was material and admissible. The discharge was dated August 10, 1886. August 8, 1887, the respondent executed a mortgage for $350 to Allen upon part of the lands embraced in the Parker mortgage. Allen testified that the respondent when she negotiated the loan furnished him with an abstract of the title of the land. This abstract he identified, and it was introduced in evidence, showing the Parker mortgage as discharged. It is claimed by respondent's counsel that, while this might have a tendency to show her guilty of obtaining money of Allen under false pretenses, it had no bearing upon her guilt or innocence of the offense for which she was being tried, and it was therefore prejudicial as well as incompetent evidence in this case. We think it had a direct bearing upon the issue in this case. It not only presented a motive upon respondent's part for the commission of the crime charged against her, but it had a tendency to prove that she uttered this alleged false discharge knowing it was forged. She must have known what the abstract contained, and she uses it knowing it to be false, if it were forged, for one of the purposes which may have been, and probably was, the object of uttering this forged discharge by placing it upon record. Such placing upon record must have been either for the purpose of selling the land apparently free from any lien, or obtaining a loan upon it under

the same appearance of the title, or for the purpose of defrauding the mortgagee. The fact that she deliberately uses this discharge, by means of this abstract, to obtain a loan, knowing that the mortgage is undischarged, is a most weighty circumstance, tending to show that she recorded this discharge, or directed its record, knowing it to be forged. Indeed, the presenting of this abstract, when she knew it to be false, was an uttering of this discharge with intent to defraud.

But the court erred in permitting the record of a mortgage executed by respondent upon some of the lands covered by the Parker mortgage to Mrs. Amy E. Day to be admitted in evidence. The mortgage was for $200, and on other lands than those embraced in the mortgage to Allen, and dated September 16, 1887. Mrs. Day was not called as a witness, and none of the circumstances of the inception of this instrument were laid before the jury. When the record was offered, objection was interposed to its admission by respondent's counsel as being irrelevant and immaterial.

*The Court.* "How is it proposed to connect it with this transaction?"

*Mr. Howard.* "Only showing that this is a mortgage covering the same land, put on shortly after this discharge was recorded."

If this mortgage had been obtained in the same way as the Allen mortgage, by the showing of the same or a similar abstract of title, such fact would have been admissible, but the name of the witness testifying to such fact ought to be on the information, for the benefit of the respondent. By the admission of this record of the mortgage the jury might infer these facts without proof, because of the Allen transaction, or be prejudiced against the respondent, because it would look as if she had also wronged Mrs. Day. This mortgage had no business in

the case, unless it was connected by some evidence, as in the case of the Allen mortgage, with the issue, to wit, the falsity of the discharge, and the respondent's knowledge of such falsity.

We find no other errors in the trial, and no error in the order of the admission of the proof, save as heretofore noted.

It is claimed that, until the *corpus delicti* was proven, the statements of the respondent to Knappen were not admissible. There are some cases where the *corpus delicti* —generally in homicide—is clearly separated and distinct from the question as to who committed the offense, if any is found to have been committed. In such cases the evidence to establish the *corpus delicti* must first be given, before acts or admissions of the accused can be put in evidence. But the present case is one where the body of the offense—the uttering of a forged instrument, knowing it to be false—is so intimately connected with the question whether or not the respondent is guilty of the crime that there can be no such separation. The *corpus delicti* in this case depends entirely for its existence upon the acts and intent of the respondent, so that her acts and admissions, if admissible at all, were admissible at any stage of the proceedings upon the trial.

The conviction of the respondent must be set aside, and a new trial granted.

SHERWOOD, C. J., CHAMPLIN and LONG, JJ., concurred. CAMPBELL, J., did not sit.