PEOPLE v. MOORE.

1. INTOXICATING LIQUORS—OFFENSES—PROSECUTION—EVIDENCE—RES GESTÆ WITNESSES—DUTY TO CALL.

On a prosecution for engaging in the business of selling intoxicating liquors without having paid the tax, contrary to section 5385, 2 Comp. Laws, persons who are shown to have bought liquors at respondent's place of business are not res gestæ witnesses within the rule requiring the prosecuting attorney to produce and examine such witnesses.

2. CRIMINAL LAW—TRIAL — WITNESSES — INDORSEMENT ON INFORMATION—PROPRIETY.

There is no abuse of discretion in permitting the prosecuting attorney to indorse the name of a witness upon the information within two hours from the time he was apprised of the witness and his testimony, and where the court announced that the case would not be concluded until the following day

in case the respondent's counsel desired to investigate the witness, and no surprise or facts affecting the credibility of the witness appear, there was no error in receiving his testimony.

3. INTOXICATING LIQUORS — OFFENSES — ENGAGING IN BUSINESS — EVIDENCE—FEDERAL LICENSE—ADMISSIONS.

On a prosecution for engaging in the business of selling intoxicating liquors without having paid the tax, contrary to section 5385, 2 Comp. Laws, it is competent to show that on being arrested respondent claimed he had paid the tax and produced and exhibited to the sheriff a receipt for the tax paid to the Federal government for the current year.

4. SAME — CRIMINAL LAW — CONDUCT OF TRIAL — RIGHTS OF ACCUSED—FURNISHING TESTIMONY.

Accused having objected to parol evidence of the contents of the Federal license, the action of the prosecuting attorney in calling upon accused's counsel to produce it, and the statement of the court that the prosecuting attorney could ask it, but that accused could not be compelled to produce it, are not ground for reversal on the theory that accused was compelled to produce evidence against himself.

5. SAME—EVIDENCE—ACCUSED'S CONTROL OF PLACE OF BUSINESS.

Evidence that packages of goods labeled mineral water, shipped over a line of railway to respondent, were delivered at the place of business which it was claimed he carried on, and when empty were returned from that place of business to the railway depot, was admissible to show that whatever business was done at that place was conducted by respondent, as against the objection that the jury were permitted to infer that the packages contained intoxicants.

Exceptions before judgment from Livingston; Miner, J. Submitted November 19, 1908. (Docket No. 172.) Decided December 14, 1908.

Lewis Moore was convicted of violating the liquor law. Affirmed.

*L. E. Howlett* and *Edmund C. Shields*, for appellant.
*James A. Green*, Prosecuting Attorney, for the people.

OSTRANDER, J.    Respondent was convicted of having

been engaged in the business of selling and with having
sold spirituous and intoxicating liquors at retail without
having paid the tax required of retail liquor dealers. 2
Comp. Laws, § 5385. No testimony was introduced on
the part of respondent. Two principal questions were
submitted to the jury; one whether business at the par-
ticular place was carried on by respondent, and the other
whether he was there, and at the time laid in the informa-
tion, engaged in the business of selling spirituous and in-
toxicating liquors at retail. There is abundant evidence
tending to prove that the business was carried on by re-
spondent, and that drinks were sold there during the year
1907, to and including the 18th day of December of that
year. There is evidence that a liquor called "hot pop,"
or "hop pop," was sold there at various times during the
year, that it appeared to be lager beer, and produced like
effects upon some who were acquainted with both bever-
ages. There is testimony that on December 18, 1907, a
man named Cone, produced as a witness for the prose-
cution, drank this liquor at respondent's place, drank
no other liquor, drank at no other place, and became
intoxicated. None of this was sold to the witness by re-
spondent, but there is testimony tending to prove that the
man who did sell it was employed by respondent "off
and on," and a jury could not well have refused to find
that he represented respondent in selling whatever he
found in the place for sale. The witness Cone testified
that on December 18, 1907, two other men whom he
named were present when he drank liquor at respondent's
place of business, and that they also drank there the same
kind of liquor. It is assigned as error that the court did
not compel the prosecuting attorney to present these men
as witnesses. If this assignment is based upon an excep-
tion, if, indeed, the point was brought to the attention of
the trial court, counsel have failed to refer to record evi-
dence of the fact. We have found no reference to the
subject in the record. These men were not res gestæ
witnesses, within the meaning of the rule which requires

that such witnesses shall be produced and examined by the prosecuting attorney. The offense respondent is charged with having committed is that of engaging in the business of selling liquor without having paid the tax. Evidence of a single sale of liquor on a particular day within the period laid in the information, coupled with evidence of other sales on that and on other days, would tend to prove the charge. There can be no doubt of the right of the prosecution to call witnesses who knew the fact to testify that they saw such sales of liquor made, to identified persons, without also calling those persons as witnesses. In any event, the testimony of other witnesses to prove the same or other sales would be cumulative.

During the progress of the trial, the prosecuting attorney asked and was granted leave to indorse upon the information the name of a witness. In permitting the name to be indorsed, the court said:

"In this case, it appears from the evidence of the prosecuting attorney that he knew nothing about this man's evidence or about the name until today noon. For that reason I think I shall permit the indorsement, but I will say to the defendant's attorney this: That it now being 15 minutes to 2, standard time, that this case will not be concluded today unless you so desire, but you may have until tomorrow morning to make such investigations as you desire in regard to this witness."

During the same afternoon, the witness was called and examined, over the objection:

"We desire to object to any testimony from this witness, for the reason there is no proper notice or sufficient notice given to the respondent or his attorneys to investigate this witness' testimony in this case."

The objection was overruled and an exception taken. The record shows that, although the sheriff had subpœnaed the witness and had him in attendance at court on the previous day, the prosecuting attorney knew nothing of his presence and had no knowledge that he

was a material witness until a few minutes previous to asking permission to indorse his name upon the information. In the absence of a showing, at the trial or after verdict, that respondent was surprised, or that an investigation had developed facts affecting the credibility of the witness, we must test the fairness of the ruling of the trial court by matter appearing to the court at the time of making the ruling. The discretion of the court was fairly exercised. The objection made to receiving the testimony of the witness conveys no intimation that an adjournment was desired until the next morning for the purpose of making an investigation. It is not claimed that an adjournment was asked for. The court had offered it if counsel desired it. It was not error to admit the testimony.

The sheriff of the county was a witness for the people, and testified that, after having arrested respondent and read the warrant to him, respondent said, "I have paid the tax," that he went with respondent at his request to the place of business—a pool room—where it is claimed the liquor was sold, and respondent took down and showed to him a paper, saying:

"There is my receipt for the government tax that I paid. I have got it posted in a conspicuous place—what I call a conspicuous place."

This testimony having been given, the following occurred:

"*Q.* What was the date of this license?

"*Mr. Shields:* We object to that as not the best evidence.

"*The Court:* I think we better show what he did with it, whether he has got it.

"*Q.* Have you got the license in your possession?

"*A.* I have not.

"*Q.* In whose possession was that license when you last saw it?

"*A.* Mr. Moore's possession.

"*Q.* Have you seen it since?

"*A.* I have not.

"*Q.* Do you know where it is now ?

"*A.* No, sir.

"*Mr. Green:* Then I make a demand on counsel for respondent to produce that license in court.

"*Mr. Howlett:* It is the first time in my life that I ever heard a prosecuting attorney request the respondent to produce evidence to convict himself.

"*Mr. Shields:* I take an exception to it.

"*The Court:* He simply asked you to do it. You can do as you please about it. The respondent or the attorneys for the respondent do not have to produce any evidence.

"*Mr. Shields:* We do not understand that the prosecutor has a right even to make such a demand, in the presence of the jury.

"*The Court:* I think, where there is an objection made, he can ask you to produce it, and then it's your choice to do as you think best about it. I don't think any one would have a right to compel you to do it.

"*Mr. Shields:* I take an exception to the statement."

The witness then testified, over objection, that the paper shown him was a receipt given by the revenue collector, that it was dated in July, 1907, and ran to July, 1908, that he did not read the paper, that respondent told him it was a receipt for the current year, and that he had paid a government tax pretty nearly every year "since I run this place, which is seven or eight years." The conduct of the prosecuting attorney in asking respondent to produce the receipt, and the language employed by the court in his rulings, and the following language used in delivering the charge to the jury, are made the grounds for several of the assignments of error. The jury were told :

"If you find what the sheriff said is true, you have a right to take that into consideration in determining what his business was at that time. Did he have a government receipt for selling spirituous and intoxicating liquors ? Was he in that business at that time, on the 18th day of December, 1907 ? * * * The government license, the United States government license, gives no one a right to sell liquor in this State. It is simply a revenue collected by the United States government upon those matters.

Outside of that, they have to give a State license as I have explained to you."

The contentions made are:

(1) That in asking the respondent to produce the government license or receipt, the prosecuting attorney was in effect demanding that respondent take the witness stand, and was asking him to give testimony against himself.

(2) That the rulings which were made and the charge to the jury assumed, and the jury must have so understood them, that respondent had a government license to sell liquor and was therefore engaged in the business of selling liquor.

It was clearly competent to prove what respondent said to the sheriff about having paid a tax and to prove the fact that he exhibited a Federal license for the current year. That the statements were made, and the license exhibited, in immediate connection with the reading to the respondent of a warrant charging him with being engaged in the business of selling spirituous and intoxicating liquor without having paid the tax, is significant. It is true the Federal authorities collect a tax upon the business of selling tobacco, and it appears that respondent kept tobacco for sale. It is not to be supposed that respondent was exhibiting to the sheriff a license to sell tobaccos in proof of his assertion that he had paid a tax upon the business of selling liquor, which was what he was charged with carrying on. The only reasonable inference to be drawn is that respondent's assertions and his exhibition of the receipt, or license, followed immediately upon, and were brought about by, his arrest upon the charge which was read to him. If the testimony was believed, it was conclusive evidence of the fact that respondent conducted the business carried on in the place. Without explanation, it was convincing evidence of the fact that he wished for no Federal interference with sales of liquor made in his place of business. The reference to the subject in the charge of the court was not error. Nor do we think the conviction should be reversed because the prosecuting attorney asked counsel for re-

155 MICH.—8.

spondent to produce the Federal receipt or license. The existence and effect of the paper were before the jury, not as discoveries made by the witness, but as relations and representations made by respondent to the witness in connection with his arrest for the offense for which he was being tried. It turned out that the witness did not read the paper further than to learn the month and year of its issue and the month and year of its expiration. We know of no rule of evidence which would prevent the prosecution from proving, by competent evidence, that the respondent had, in fact, paid the internal revenue tax exacted from a retail dealer in spirituous liquors and had a receipt therefor posted up in his place of business. Admissions of the respondent would prove it. Production of the receipt itself would prove it. Parol evidence of the contents of the paper could not be given until notice to produce the original was first given. No constitutional or other rights of the accused are involved in making such a demand. The objection which was made by counsel for respondent was that the best evidence of the contents of the paper was not being presented. The paper was in respondent's possession. Notice in writing to produce it might have been given, and is a practice more to be commended than that pursued by the prosecuting attorney; but we are convinced that respondent was in no manner prejudiced by the oral demand to produce the paper or by what the court said upon the subject. See *People* v. *Brown*, 110 Mich. 168.

The prosecution introduced evidence tending to prove that goods were shipped to respondent over a line of railway, consigned to him, and delivered at the place of business which it is claimed the respondent carried on. When the cases were emptied, they were returned from this place of business to the railroad depot. It is said the admission of this testimony was prejudicial, because the jury were permitted to infer that, although the packages were billed as mineral water, they in fact contained intoxicating liquors. The record discloses, and this has already been

stated, that one of the issues was whether the respondent was the person conducting whatever business was carried on at the particular place. Clearly, the testimony was competent to prove this fact.

No other of the alleged errors requires particular notice.

We have found no reversible error, and the conviction is therefore affirmed.

GRANT, C. J., and BLAIR, MONTGOMERY, and BROOKE, JJ., concurred.