PEOPLE *v.* HILL.

1. CRIMINAL LAW—WITNESSES—EVIDENCE—REBUTTAL.
   Where defendant in criminal case puts his character in issue by proof of general reputation, evidence of independent acts of misconduct is inadmissible in rebuttal.

On cross-examination of witness as to character of accused, see annotation in 20 L. R. A. 615.
As to right of witness to testify to character from personal knowledge, see annotation in 22 L. R. A. (N. S.) 650.

2. WITNESSES—CROSS-EXAMINATION OF CHARACTER WITNESSES—
SPECIFIC ACTS OF MISCONDUCT.

Defendant's character witness may be cross-examined to test
his knowledge and candor, and for that purpose only he may
be asked if he has heard of specific acts of misconduct by
defendant.

3. SAME—MAY NOT BE QUESTIONED ON UNKNOWN ACT OF MISCON-
DUCT.

Cross-examination of defendant's character witnesses, based on
existence of some act of misconduct on his part which it was
assumed they knew nothing about, but which might be subse-
quently developed on trial, was error.

4. CRIMINAL LAW—ARGUMENT—PROSECUTOR'S PERSONAL BELIEF AS
TO GUILT OF DEFENDANT.

Prosecuting attorney has no right to state to jury what he
personally thinks or believes as to defendant's guilt, except
as shown by proof.

5. SAME—REFLECTIONS ON OPPOSING COUNSEL UNJUSTIFIED.

Prosecuting attorney's statement to jury that defendant's coun-
sel could lose no friends in county because he couldn't lose
what he didn't have, *held*, unjustified.

6. SAME—RACIAL PREJUDICE—NEGROES.

Prosecuting attorney's appeal to racial prejudice, in trial of
colored man for murder, by stating to jury that, if they wanted
to live with him, to bring in verdict of not guilty, *held*,
prejudicial error.

CLARK, C. J., and MCDONALD and NORTH, JJ., concurred in re-
sult.

Appeal from Oakland; Gillespie (Glenn C.), J.
Submitted January 15, 1932. (Docket No. 200, Cal-
endar No. 35,928.) Decided April 4, 1932.

Alfred Hill was convicted of murder in the sec-
ond degree. Reversed, and new trial granted.

*Oliver M. Green,* for appellant.

*Paul W. Voorhies,* Attorney General, *Clarence L.
Smith,* Prosecuting Attorney, and *Edward J. Fal-
lon,* Assistant Prosecuting Attorney, for the people.

POTTER, J.   Defendant, a resident of Pontiac, Oakland county, was, on March 18, 1931, charged in a complaint made by Joe Palace, with the murder of Richard Coffee, at Pontiac, on November 27, 1930. A warrant was issued by the justice of the peace before whom complaint was made, and defendant arrested.   At the April, 1931, term of court, defendant was arraigned, an information filed by the prosecuting attorney against him, he stood mute, and a plea of not guilty was entered by order of the court. The case was brought on for trial in the circuit court, May 8, 1931.   Before calling a jury, defendant moved for an order requiring the prosecuting attorney to indorse upon the information the witnesses named in the motion, whom defendant, by his attorney, offered to prove were known to the prosecuting attorney, as well as their addresses, and what they would testify to.   This motion the court passed with a remark, "I don't know anything about what witnesses are to be produced yet, so I am unable to rule on the motion."   At this time there was before the court the information with the names of witnesses indorsed thereon, the motion of defendant naming the witnesses, defendant's offer to prove their residence, what they would testify to, and knowledge of the prosecuting attorney of the facts to be proved by them.   A jury was then impaneled.   The prosecuting attorney and defendant's counsel made opening statements.

1.   On the examination of the witness Heywood Gullotte, it appeared he had made a written statement, and a carbon copy of this was presented to him, and he identified it as such and stated it contained the facts as witness had stated them to defendant's counsel.   Defendant offered the paper in evidence.   The prosecuting attorney objected to the

offer because the question was a repetition. The court rejected the offer because the paper was not properly identified, and sufficient foundation had not been laid for its introduction. We think there was no error in this ruling of the court.

2. Was there error in refusing to order the prosecuting attorney to indorse the names of all the eyewitnesses known to the people on the information, and call such witnesses?

The only legitimate object of a criminal prosecution is to show the facts—to lay before the triers the whole transaction as it was, whether it tends to establish guilt or innocence. *Hurd* v. *People,* 25 Mich. 405; *People* v. *Etter,* 81 Mich. 570; *People* v. *Kindra,* 102 Mich. 147. Eyewitnesses to alleged crimes should not only be produced, but sworn and examined by the prosecutor. *Maher* v. *People,* 10 Mich. 212 (81 Am. Dec. 781); *People* v. *Deitz,* 86 Mich. 419; *People* v. *Kindra, supra; People* v. *Moore,* 155 Mich. 107. The prosecution cannot claim a conviction upon evidence which either expressly or impliedly shows that but a part of the *res gestæ* has been proven. The prosecuting attorney cannot thus deprive defendant of the benefit of the presumption of innocence and throw upon him the burden of proof. *Maher* v. *People, supra; Hurd* v. *People, supra; Wellar* v. *People,* 30 Mich. 16; *Meister* v. *People,* 31 Mich. 99; *People* v. *Elco,* 131 Mich. 519. There is no fairness in permitting the prosecuting attorney to select only those eyewitnesses whom he desires to call and not call others equally qualified to testify, and he cannot be permitted to resort to it. *Wellar* v. *People, supra; People* v. *Swetland,* 77 Mich. 53.

"It is the duty of the people to produce all available eyewitnesses or excuse their nonproduction in a proper way." *People* v. *Todaro,* 253 Mich. 367.

"The failure to indorse and produce these witnesses is not a mere irregularity. It is a positive invasion of a substantial right of defendant under the law." *People* v. *Blazenzitz,* 212 Mich. 675, citing *People* v. *Hall,* 48 Mich. 482, 487 (42 Am. Rep. 477); *People* v. *Price,* 74 Mich. 37, 41; *People* v. *Howes,* 81 Mich. 396, 400.

Defendant's counsel, by motion timely made, raised the question of the indorsement of the names of these witnesses on the information and their production as eyewitnesses. No order was made by the trial court. The prosecuting attorney said in his closing argument to the jury: "It is not my duty to put a witness on the stand I know about." Under the circumstances, we think the refusal of the trial court to indorse the names of all of the eyewitnesses upon the information known to the people when the matter was called to his attention was error which tended to prejudice the rights of defendant.

3. Defendant introduced testimony tending to show his good character. On cross-examination of defendant's good character witnesses the prosecuting attorney asked the following questions, and against defendant's objection the court permitted the witnesses to answer the same:

"If it develops while he worked for you he was keeping company with a married woman and if you happened to know that, would that change his reputation in your opinion for being a law-abiding citizen?  *  *  *

"If you knew, and the facts of this case show, that Mr. Hill was keeping company with a married woman, would that change your opinion any?  *  *  *

"If you knew on the evening of November 27, 1930, respondent went out to a social gathering, with no idea of anticipating any trouble, and put that revolver loaded into his belt, took it with him, would

that affect your opinion as to his reputation as a law-abiding citizen?''

Under all the authorities this cross-examination was improper.

''The appropriate proof of character is by establishing general reputation.'' 22 C. J. p. 479, citing *People* v. *Albers,* 137 Mich. 678.

When a defendant has put his character in issue by proof of general reputation, it is not competent nor relevant on the part of the prosecution to introduce evidence of independent acts of misconduct. 1 Wharton Criminal Evidence (10th Ed.), § 61.

''Rebutting evidence of character should in like manner be by proof of general reputation.'' 22 C. J. p. 480.

''Nothing but general reputation is allowable for such a purpose. It cannot be attacked by proof of particular acts or particular suspicions. This doctrine is elementary.'' *Proctor* v. *Houghtaling,* 37 Mich. 41, 44.

The reason for the rule is that to hold otherwise would raise collateral issues.

''As has often been remarked, the general reputation of any one may be expected to be within the knowledge of attainable witnesses at all times, but it would be impossible to be prepared for all the particular slanders which perjured and malicious witnesses might invent.'' *Proctor* v. *Houghtaling, supra,* 45.

The rule of this case was followed by this court in *Thibault* v. *Sessions,* 101 Mich. 279, and *Smitley* v. *Pinch,* 148 Mich. 670.

''Within what limits must the rebutting evidence be confined? I think that that evidence must be of the same character and confined within the same

limits—that as the prisoner can only give evidence of general good character, so the evidence called to rebut it must be evidence of the same general description, showing that the evidence which has been given in favor of the prisoner is not true, but that the man's general reputation is bad." *Regina* v. *Rowton,* Leigh & Cave C. C. Res., 520, 531.

There is a difference in the rules governing the introduction of rebuttal testimony and governing cross-examination. A witness who testifies to another's good reputation may be cross-examined to test his knowledge and candor (22 C. J. p. 483) ; for that purpose it has been held he may be asked if he has heard of specific cases of misconduct. He may be asked these questions only to test his credibility and ascertain the weight to be given to his testimony. *Rex* v. *Martin,* 6 Car. & P. 562 (172 Eng. Repr. 1364) ; *Leonard* v. *Allen,* 11 Cush. (65 Mass.) 241; *Commonwealth* v. *O'Brien,* 119 Mass. 342 (20 Am. Rep. 325).

On the other hand, it has been held the people may not, on cross-examination of defendant's good character witnesses, go into specific acts or conduct on particular occasions, and, when the trial court has permitted such cross-examination over defendant's objection, judgment of conviction has been reversed. *Nelson* v. *State,* 32 Fla. 244 (13 South. 361).

4 Chamberlayne on Evidence, § 3314, thus summarizes the general rule:

"Where a witness testifies that the reputation of a certain person is good, he may be asked on cross-examination if he has not heard of particular acts of misconduct by such person. The inquiry must be limited to what the witness has heard, facts within his personal knowledge not being regarded as competent. The evidence is not received with a view to affecting the reputation of the person under con-

sideration. It is said to be admitted to test the credibility or the knowledge of the witness. This practice of cross-examination may be justified on either ground and the inquiry may disclose both a lack of knowledge and a lack of fairmindedness. A witness to good character in effect says either that he never has heard anything to the discredit of the person in question or that whatever bad rumors may have been existent are outweighed and overwhelmed by a general good reputation. Hence, it follows that an inquiry as to bad rumors may disclose that the witness is wilfully testifying to good reputation without regard to the facts or that he has no sufficient knowledge upon which to base his testimony. The practice borders dangerously near the forbidden practice of proving reputation by specific acts of misconduct, as testimony of a rumor that a person has been guilty of a particular act naturally must have some effect on the minds of the jurors in the direction of injuring the reputation of such person, although the presiding judge may expressly charge that it is to be considered as affecting the weight of the testimony of the witness only.''

Measured by this rule, the cross-examination of these witnesses over defendant's objection was clearly error. Such cross-examination had nothing to do with the witness's knowledge. Some of the questions were based upon the existence of something it was assumed the witness knew nothing about, but which the prosecuting attorney assumed might be subsequently developed on the trial. So far as based upon facts developed subsequent to the trial upon cross-examination, it was inadmissible. *People* v. *Snyder,* 173 Mich. 616; *People* v. *Huff,* 173 Mich. 620.

''Evidence, however, of general good character previous to the date of the transaction charged can-

not be rebutted by evidence of bad character after the act, and the cross-examination must be confined to acts prior in time to the act charged.'' *People* v. *Huff*, *supra*, citing *People* v. *Laird*, 102 Mich. 135.

There was a clear abuse of the right of cross-examination.

4. After the jurors had been deliberating for some time, they were brought in and the trial court thereupon charged them as follows:

''In conferring together you ought to pay proper respect to each other's opinions, and listen, with a disposition to be convinced, to each other's arguments. And on the one hand, if much the larger number of your panel are for conviction, a dissenting juror should consider whether a doubt in his own mind is a reasonable one, which makes no impression upon the minds of so many jurors equally honest, equally intelligent with himself, and who have heard the same evidence, with the same attention, with an equal desire to arrive at the truth, and under the sanction of the same oath. And, on the other hand, if a majority are for acquittal, the minority ought seriously to ask themselves whether they may not reasonably, and ought not to doubt the correctness of a judgment which is not concurred in by most of those with whom they are associated; and distrust the weight or sufficiency of that evidence which fails to carry conviction to the minds of their fellows.''

This identical language was used by the trial court in *Commonwealth* v. *Tuey*, 8 Cush. (62 Mass.) 1, and is quoted in *People* v. *Engle*, 118 Mich. 287. We think the charge in this case complies with rules in the cases cited, and under the circumstances was not erroneous.

5. Complaint is made of the improper argument of the prosecuting attorney; of his stating to the

jury what he thought of defendant's guilt; that defendant's counsel could lose no friends in Oakland county, "because he cannot lose something he doesn't have," and to his stating to the jury, "If you want to live with him (defendant) bring in a verdict of not guilty," and other things.

(a) "The impropriety of expressing a personal opinion to the jury upon disputed facts has always been regarded as great, and has in some notable instances led to unpleasant strictures on the character of celebrated counsel. Whatever allowance may be made for professional enthusiasm, a deliberate and solemn averment of counsel's opinion should never be allowed to influence the jury, and when given, as here, as an opinion under oath, it should have been at once shut out and its influence guarded against by proper instructions, as requested." *People* v. *Quick*, 58 Mich. 321.

A question similar to that raised here was before the court in *People* v. *Montague*, 71 Mich. 447, and received the condemnation of this court.

(b) The prosecuting attorney should be permitted to argue the testimony, but has no right to state what he personally thinks or believes of defendant's guilt, except as shown by proof. If he has first-hand knowledge of facts which legitimately tend to show defendant's guilt, it is his duty to present them under oath from the witness stand the same as any other witness. If his knowledge is only that based upon the testimony, he should confine himself to his duty as a prosecuting official.

(c) The reflections by the prosecuting attorney upon defendant's counsel, objected to, were, so far as this record is concerned, uncalled for and unjustified.

(d) Defendant was a colored man. There was no reason to seek to appeal to racial prejudice. The

jurors may not have wanted to live with him, but that is no reason why he was not entitled to a fair trial, in accordance with the usual orderly practice. We think the argument of the prosecuting attorney prejudicial and erroneous.

6. The other errors complained of are not likely to arise on a new trial. Conviction reversed. New trial ordered.

FEAD, WIEST, and BUTZEL, JJ., concurred with POTTER, J. CLARK, C. J., and McDONALD and NORTH, JJ., concurred in the result.

SHARPE, J. I concur in reversal for the reasons stated in paragraphs 3 and 5 of the foregoing opinion.