### PEOPLE *v.* SEMCHENA.

1. CRIMINAL LAW—RES GESTAE WITNESSES.

     Prosecution in a criminal case is required only to indorse and call *res gestae* witnesses, and not all of such witnesses must be indorsed on the information and called by the State, especially when the offense charged is not one of violence, but every *res gestae* witness whose testimony is reasonably necessary to protect the accused against a false accusation should be indorsed and called by the prosecution (CLS 1961, § 767.40).

2. SAME—INDORSED WITNESSES.

     The prosecutor in a criminal case is not required to indorse on the information the name of one not a *res gestae* witness, but upon indorsement of such witness, the prosecutor has a duty to produce said witness at trial, although he may be excused therefrom upon a showing of due diligence in attempting to serve the witness a subpoena (CLS 1961, § 767.40).

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 21 Am Jur 2d, Criminal Law § 328.
[3] 4 Am Jur 2d, Appeal and Error §§ 486, 487.
[4] 21 Am Jur 2d, Criminal Law §§ 328, 333, 337, 344.
[5] 21 Am Jur 2d, Criminal Law § 225.
[6] 21 Am Jur 2d, Criminal Law §§ 218, 225.
     42 Am Jur, Prosecuting Attorneys § 20.
     Am Jur 2d, Desk Book, Document No. 91, Canons of Professional Ethics, Canon 5.
[7–11] 21 Am Jur 2d, Criminal Law §§ 218, 225.
     42 Am Jur, Prosecuting Attorneys § 20.
     39 Am Jur, New Trial § 38.
     Am Jur 2d, Desk Book, Document No. 91, Canons of Professional Ethics, Canon 5.
     Suppression of evidence by prosecution in criminal case as vitiating conviction. 33 ALR2d 1421.
[12] 5 Am Jur 2d, Appeal and Error § 726.
[13] 39 Am Jur, New Trial § 38.
     5 Am Jur 2d, Appeal and Error §§ 726, 974.

3. APPEAL AND ERROR—INADEQUATE RECORD—MOTION FOR NEW TRIAL.
   Second-guessing is not the function of an appellate court, nor will it indulge in second-guessing to supplement gaps in the record, particularly where an affidavit in opposition to that presented on a motion for new trial is first filed on appeal.

4. CRIMINAL LAW—RES GESTAE WITNESSES—FAILURE TO PRODUCE— WAIVER OF PRODUCTION.
   Claim by prosecution that defendant, charged with uttering and publishing a bad check, waived the calling of a *res gestae* witness through his counsel, who agreed to the prosecutor's failure to call additional witnesses after the prosecutor had stated that the testimony of additional witnesses would be cumulative, *held*, without merit, where subsequent thereto, one of the *res gestae* witnesses submitted an affidavit that he, and not defendant, had committed the crime of which defendant was convicted, and that he had informed both the police and the prosecutor of this fact prior to defendant's trial, since the record is devoid of any indication that defendant actually knew that the witness might so testify if called by the prosecution, it not being the function of an appellate court to supplement gaps in the record by second-guessing, particularly where the prosecution's denial affidavit is first filed on appeal (CL 1948, § 750.249).

5. SAME—SUPPRESSION OF EVIDENCE.
   Any allegation that the State suppressed evidence in a criminal case boils down, in the end, to what the State knows at the time of trial in comparison to the knowledge held by the defense.

6. SAME—SUPPRESSION OF EVIDENCE.
   The prosecutor in a criminal case has a duty to furnish all evidence within his power bearing upon the issue of guilt or innocence, in relation to the main issue, or to give some good excuse for not doing so.

7. SAME—SUPPRESSION OF EVIDENCE—NEW TRIAL.
   Failure of the prosecution to call a witness whom it knows will give testimony favorable to an accused requires a grant of a new trial, where such knowledge was not known by the defense.

8. SAME—SUPPRESSION OF CONFESSION—VALIDITY.
   Knowledge on the part of the prosecution that an indorsed witness had confessed to the crime of which defendant was convicted, indicating in said confession that defendant did not participate in the crime, requires reversal for a new trial, regardless of the truth or falsity of said confession, where said witness was not produced by the prosecution at trial, the de-

fense had no knowledge of said confession, and the prosecution stated at trial that it was not calling additional witnesses because their testimony would only be cumulative.

9. SAME—DUTY OF PROSECUTION TO PRODUCE EVIDENCE.

The obligation of the State in a criminal case, is not to convict, but to see that, so far as possible, truth emerges, this being its ultimate responsibility to provide a fair trial, under the due process clause, there being no respectable interest of the State which is served by concealment of information which is material, generously conceived, to the case, including all possible defenses (US Const, Am 14).

10. SAME—MOTION FOR NEW TRIAL—CONFESSION OF INDORSED WITNESS.

Motion for a new trial, based upon a confession to the crime of which defendant was convicted, made by a witness indorsed upon the information but not called by the prosecution at trial on the basis that his testimony would be merely cumulative, which confession also exonerates defendant from participation in the crime and states that such information was made known to both the police and the prosecution before defendant's trial, requires that the trial court hold a hearing with respect thereto, granting defendant a new trial if the evidence indicates that the prosecution had knowledge of the confession and the defense did not, since the suppression thereof necessarily denied defendant a fair trial (US Const, Am 14).

11. SAME—MOTION FOR NEW TRIAL—CONFESSION OF ANOTHER—VALIDITY.

Motion for new trial, made by defendant convicted of uttering and publishing a bad check, based upon a confession by a witness indorsed on the information, but not called by the prosecution on the basis that his testimony would be cumulative, which confession admits that said witness committed the crime and that defendant did not participate therein, requires that the trial court, if it finds that the prosecution and the defense had no knowledge of said confession, hold a hearing on said motion to determine whether there is sufficient evidence of the falsity thereof so that the testimony of said witness would not have made a different result probable, denying said motion if it so finds, but granting said motion if it finds to the contrary (CL 1948, § 750.249).

12. APPEAL AND ERROR—FURTHER PROCEEDINGS IN TRIAL COURT.

Matters not pursued at a hearing in the trial court, which are fundamental to basic constitutional rights, cannot be properly

determined in appellate court, since the forum for such determination is the trial court where a proper hearing on the matter can be held.

13. SAME—MOTION FOR NEW TRIAL.

Appeal from denial of a motion for new trial, which motion was based upon alleged suppression of a confession by a witness indorsed on the information but not called by the prosecution at trial, which confession stated that the witness committed the crime, that defendant did not participate therein, and that the witness had made said facts known to both the police and the prosecution prior to defendant's trial requires remand to trial court for proper evidentiary hearing, where defendant's motion for new trial was denied without first conducting such hearing, since the determination of fundamental basic constitutional rights cannot properly be determined in an appellate court when there has been no hearing on such matters by the trial court (US Const, Am 14).

Appeal from Saginaw; Huff (Eugene Snow), J. Submitted Division 3 February 8, 1967, at Lansing. (Docket No. 780.)   Decided July 10, 1967.

Charles Semchena was convicted of uttering and publishing a forged check. Defendant appeals. Affirmed, in part, but remanded for further proceedings.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Bruce J. Scorsone,* Chief Assistant Prosecuting Attorney, for the people.

*Joseph R. McDonald,* for defendant.

FITZGERALD, J. The matter at hand deals with the production in postconviction proceedings of affidavits tending to raise a question concerning the jury trial of defendant. Such affidavits, whether they deal with allegedly prejudiced jurors (*People*

v. McKee [1967], 7 Mich App 296), exculpatory statements (People v. Douglas [1966], 4 Mich App 208) or similar matters, raise crucial problems for individual consideration.

The affidavit involved in the instant case goes a step beyond the run-of-the-mill postconviction proceeding affidavit. It both purports to exculpate defendant and is, in effect, a confession.

The facts of the case are as follows: Defendant Semchena was charged with uttering and publishing a forged check under CL 1948, § 750.249 (Stat Ann 1962 Rev § 28.446). Seven witnesses' names were indorsed on the information by the prosecution. Later, a motion was made by the prosecution to add 11 new names to the previous list of indorsed witnesses on the grounds they were necessary to the proper prosecution of the charge. At trial, only 5 witnesses testified and at the close of the State's proofs, the following colloquy took place:

"*Mr. Scorsone.* The people have no further evidence to present, Your Honor.

"The people rest.

"For the record, Your Honor, as to the additional witnesses indorsed on the information: the testimony that they would give would be purely cumulative and therefore the prosecution requests that these witnesses—would state that these witnesses—would not be produced by the people.

"*Mr. McDonald.* If by that the prosecutor means that they would add nothing to what's already gone on, that is cumulative, is that correct, Mr. Scorsone?

"*Mr. Scorsone.* Yes.

"*Mr. McDonald.* To what has already been produced in this courtroom?

"*Mr. Scorsone.* Yes.

"*The Court.* And would any of those witnesses have been an eyewitness to the cashing of the check?

"*Mr. Scorsone.* No.

"*Mr. McDonald.* All right."

The defendant did not call any witnesses. He asked for a directed verdict on the ground there was not sufficient evidence to prove beyond a reasonable doubt that the defendant committed the crime charged. The motion was denied. The jury returned a verdict of guilty. Defendant made a motion for a new trial on the same ground as the motion for the directed verdict, plus the ground that the prosecutor had failed to produce an indorsed witness.

It should be noted at this point that the record does not indicate whether any of these witnesses were *res gestae* witnesses. The rule as to the necessity of calling *res gestae* witnesses is set forth in *People* v. *Dickinson* (1966), 2 Mich App 646. The rule as to the necessity of producing an indorsed, non-*res gestae* witness is set forth in *People* v. *Kern* (1967), 6 Mich App 406.

John Clugston, an indorsed witness not produced by the prosecutor, by affidavit attached to the motion for new trial, stated the following:

"JOHN A. CLUGSTON, being first duly sworn, deposes and says as follows:

"1. That on October 12, 1962, he appeared at Ray's Food Fair, 5700 State street, Saginaw, Michigan, and presented and cashed a false, forged and counterfeit check, dated October 12, 1962, drawn on the account of B&M Heating Company, 118 S. Hamilton street, Saginaw, Michigan, through the National Bank of Saginaw, Saginaw, Michigan, and payable to the order of David Ross, in the amount of $117.50;

"2. That he has examined the photostatic copy of the check attached hereto and marked 'exhibit A', and does herewith acknowledge that this is the check which he presented and cashed at Ray's Food Fair, 5700 State street, Saginaw, Michigan, on October 12, 1962, as aforesaid;

"3. That the defendant, CHARLES SEMCHENA, was not with him at the time he cashed the said check at Ray's Food Fair; that the said defendant had no knowledge of his activities in connection with the cashing of the said false and forged check, and is innocent of any guilt or criminal responsibility in connection therewith;

"4. That subsequent to his arrest, he was interviewed by Detective H. A. McBratnie, sheriff's department of Saginaw county, Michigan, and was questioned about his activities in connection with the false and forged check he had cashed; that in addition to admitting and identifying several forged checks he had cashed, deponent told the officer that he had passed the forged check for which the defendant now stands accused;

"5. That during the course of several conversations with various law-enforcement officials, including Detective Donald A. Berg of the Saginaw police department and Stuart E. Fox, prosecuting attorney for Saginaw county, and certain of his assistant prosecutors, your deponent told them that he had presented and cashed the forged check at Ray's Food Fair, and that the defendant was innocent of any guilt in connection therewith;

"6. That on or about September 16, 1964, he was released from Jackson prison on parole; that following his release, he had a further conversation with ..................., assistant prosecuting attorney for Saginaw county, and at that time he told the said assistant prosecutor that he had presented and cashed the check in question at Ray's Food Fair;

"7. That he does herewith swear on his solemn oath that on October 12, 1962, he appeared at Ray's Food Fair, 5700 State street, Saginaw, Michigan, and personally presented and cashed the forged check for which the defendant was tried and convicted;

"Further deponent saith not.

/s/ JOHN A. CLUGSTON
    John A. Clugston"

It will be noted that the affidavit presents several important allegations. The affiant states he cashed the forged check that was the basis of defendant's prosecution and that he had informed the Saginaw police department, sheriff's department, and the prosecutor's office of this *prior* to trial. The prosecution's denial of this was filed in the form of an affidavit made part of his brief on appeal and consequently was not before the trial court.

On the hearing of the motion for new trial, the court reiterated its ruling that there was sufficient evidence to support a conviction, and in addition ruled in favor of the prosecutor's contention that defendant waived his right to call Clugston.

Defendant claimed that to hold there was a waiver would be unfair in light of the prosecutor's assurance that all the remaining witnesses' testimony would be cumulative when it appears it was not, and that Clugston's testimony would have vindicated defendant. The court dealt with the affidavit in the following language:

"The next matter mentioned in the defendant's motion for a new trial relates to the error claimed to have occurred in this case as a result of the people indorsing upon the information the name of John Clugston and certain other witnesses to support the people's claim in this case.

"At the time of the trial, as defense counsel has indicated here in court today, the attorney for the people stated that the testimony of Clugston and the other witnesses was not necessary, was cumulative, and that he would not call the witnesses. At that time defense counsel under the well settled rules of law in this State could have insisted that the people produce the witnesses whose names were indorsed upon the information for cross examination by the defendant who would not have been presenting them as defendant's witnesses. The

record indicates that the defense counsel did not
do that, but that defense counsel immediately rested
and took the case to the jury apparently believing
that the people's evidence was weak enough so that
the defendant could obtain an acquittal, contrary
to what proved to be the case, and the jury found
the defendant guilty as charged.

"As already stated, there was evidence to sup-
port their verdict. There was no error as far as
the court can see on the record as presented in this
matter.

"The court will say further, however, that coun-
sel has since the trial offered in support of the
motion for a new trial an affidavit of the witness
John A. Clugston whose name was indorsed upon
the information and who was not called at the trial.

"Inasmuch as this affidavit is in addition to the
record made at the time of the trial, and prior
thereto, the court feels that perhaps some further
comment should be made.

"The investigation of the corrections department
indicated that Mr. Clugston and the defendant
Semchena were involved together in a scheme to
cash a number of checks in this community and
that a considerable number of forged, false and
fraudulent checks were cashed. Now what Mr.
Clugston would have testified to had he been pres-
ent here in court the court does not know.

"The court does know, however, that when it was
first proposed that his name be indorsed upon the
information as an additional witness, the defend-
ant's counsel objected to it and the objection was
sustained by the court, that on a subsequent occa-
sion, whether at this trial or at a different trial, the
name of John Clugston was indorsed on the infor-
mation, he was under subpoena, did not appear to
testify.

"The court recalls that in one of the cases where
he did not appear, defense counsel again did not
insist upon his being here, although he did make

a motion to have the case dismissed and the case was dismissed by the court and Mr. Clugston did not appear.

"In this case the evidence was sufficient to take the charge to the court without the evidence of Mr. Clugston. The court therefore submitted the case to the jury on the evidence indicated in the record.

"What Mr. Clugston might have testified to if he had been here, whether his testimony would have supported the affidavit or whether it would have gone further and supported the information obtained from the corrections department report, which indicated he and Mr. Semchena were jointly involved in the fraudulent check scheme, of course the court does not know."

The record is devoid, as are the briefs, of any indication of whether defendant actually knew of the matters to which Clugston would have testified had he been called by the prosecution.

On a record such as this, it is difficult to sustain a waiver on the part of the defense. Without the benefit of further hearings, such as could be conducted by a trial court, any impression that we form is second-guessing at best. The colloquy, *supra,* which took place at the close of the State's proofs, if analyzed, particularly in regard to the direct question by defense counsel as to whether their testimony would have been cumulative, is some *indicia* the defense did not know the import of Clugston's potential testimony.

Second-guessing, however, is not the function of an appellate court nor will we indulge in it to supplement the gaps in the record, particularly in light of the fact that the prosecution's denial affidavit was not filed until the matter reached this Court.

At the time the motion for a new trial was made, 2 major issues were presented. The first was wheth-

er the prosecutor fulfilled his duty of disclosure of evidence. The second issue relates to the truth of Clugston's statements. A further consideration is whether the defense knew that Clugston's testimony would have exonerated defendant and yet let it slip through its fingers.

Initially, the trial court must determine whether the State had knowledge of the confession of Clugston.

"In the end, any allegation of suppression boils down to what the State knows at the time of trial in comparison to the knowledge held by the defense." *Giles* v. *Maryland* (1967), 386 US 66, 96 (87 S Ct 793, 808, 17 L ed 2d 737, 757).

If the trial court finds that the prosecutor had such knowledge, and the defense did not, then the motion for new trial should be granted on the basis of the prosecutor's duty "to furnish all evidence within his power bearing upon the issue of guilt or innocence, in relation to the main issue, or to give some good excuse for not doing so." *People* v. *Swetland* (1889), 77 Mich 53 at 57. In accord, *Giles* v. *Maryland, supra*. Such finding would require the grant of a new trial, regardless of the truth or falsity of Clugston's confession, since the prosecution not only failed to call him as a witness, but also stated that his testimony would be cumulative when, if in accord with his confession, it would not. The original trial would fall since the statement was material and the suppression of it necessarily denied defendant a fair trial.

In *Giles* v. *Maryland* (1967), 386 US 66, 98 (87 S Ct 793, 809, 17 L ed 2d 737, 758), Justice Fortas states:

"The State's obligation is not to convict, but to see that, so far as possible, truth emerges. This is also the ultimate statement of its responsibility

to provide a fair trial under the due process clause of the Fourteenth Amendment. No respectable interest of the State is served by its concealment of information which is material, generously conceived, to the case, including all possible defenses."

However, if the trial court concludes that the prosecution and the defense lacked knowledge of the confession, the truth of the confession becomes relevant. If upon hearing, the trial court finds that there is sufficient evidence of the falsity of such confession that the testimony of Clugston would not have made a different result probable, the motion for new trial should be denied. It otherwise should be granted.

Matters such as this which have not been pursued in a hearing and which are fundamental to basic constitutional rights, cannot be properly determined in an appellate court. The forum for such determination remains the trial court and a proper hearing on the matter could have been, and now can be, determinative of the matters raised upon appeal.

As to other points raised by the defendants, we find no abuse of discretion in the rulings of the trial court.

The case is affirmed on all matters save those discussed in this opinion and the case is remanded for hearings consistent with this opinion.

HOLBROOK, P. J., and J. H. GILLIS, J., concurred.