PEOPLE v HALEY

Docket No. 81994. Submitted March 6, 1986, at Lansing. Decided July 21, 1986.

Rick A. Haley was charged in Washtenaw Circuit Court with one count of first-degree criminal sexual conduct and two counts of second-degree criminal sexual conduct arising out of an incident involving his eight-year-old niece while he was babysitting. Prior to trial, defendant moved for the admission of evidence of certain instances of sexual conduct between the complainant and her father to explain the complainant's knowledge of sexual matters and to dispel any inferences of sexual innocence which the jurors might otherwise be inclined to make based on the complainant's youth. The trial court, Edward D. Deake, J., denied the motion on the ground that evidence of complainant's sexual relationship with a third person was inadmissible under the rape-shield statute and that the complainant's knowledge of sexual matters could be proven by alternative methods so that defendant's constitutional rights would not be denied. Defendant was subsequently convicted and sentenced. He appealed. *Held:*

1. The trial court properly denied defendant's pretrial motion in a manner that preserved defendant's ability to competently present a defense explaining the complainant's detailed and accurate sexual knowledge.

2. The admission of evidence which merely explained the complainant's detailed and accurate sexual knowledge was not sufficient to protect defendant's constitutional rights of confrontation and cross-examination once the prosecution introduced medical evidence to establish penetration. Defendant should have been allowed to introduce evidence of sexual assaults upon the complainant by her father for the purpose of rebut-

REFERENCES

Am Jur 2d, Evidence §§ 251 *et seq.*

Am Jur 2d, Rape §§ 82 *et seq.*

Modern status of admissibility, in statutory rape prosecution, of complainant's prior sexual acts or general reputation for unchastity. 90 ALR3d 1300.

See also the annotations in the ALR3d/4th Quick Index under Rape.

ting the prosecution's evidence regarding sexual penetration and the inference that defendant was the person responsible. The trial court's refusal to allow the admission of this evidence requires reversal of defendant's conviction for first-degree criminal sexual conduct.

3. If defendant is retried on the first-degree criminal sexual conduct charge on remand, an in camera hearing shall be conducted after which the trial court shall place appropriate limitations upon the method by which defendant may present the evidence to the jury.

4. Defendant's first-degree criminal sexual conduct conviction is reversed. His convictions for second-degree criminal sexual conduct are affirmed.

Affirmed in part, reversed in part, and remanded.

SHEPHERD, P.J., concurred but wrote separately to point out the existence of improper conduct and remarks by the prosecuting attorney. He found no prejudice to defendant, however, because of the reversal of the first-degree criminal sexual conduct conviction and the fact that defendant confessed to the two second-degree criminal sexual conduct charges.

OPINION OF THE COURT

1. RAPE — CRIMINAL SEXUAL CONDUCT — EVIDENCE OF PRIOR SEXUAL CONDUCT.

Generally, evidence of a rape victim's prior sexual conduct or reputation, when offered to prove consent or for general impeachment, is inadmissible; however, admission of such evidence may be required where offered to preserve a defendant's right to confrontation.

2. RAPE — CRIMINAL SEXUAL CONDUCT — EVIDENCE OF PRIOR SEXUAL CONDUCT.

The admissibility of evidence of the reputation of a rape victim is within the discretion of the trial court only where the defendant's right to confrontation is implicated; upon a showing by the defendant that the evidence offered is relevant for the preservation of the defendant's right to confrontation, as distinct from evidence of character or for impeachment, the court must order a hearing in camera to determine admissibility in which the scope of cross-examination is restricted to prevent questions that would harass, annoy, or humiliate the victim and to guard against mere fishing expeditions; during the hearing, the court retains its power to exclude relevant evidence where its probative value is substantially outweighed by the risks of unfair prejudice, confusion of issues, or misleading the jury (MCL 750.520j; MSA 28.788[10]).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William F. Delhey,* Prosecuting Attorney, and *David A. King,* Assistant Prosecuting Attorney, for the people.

*Norman Fell,* for defendant on appeal.

Before: SHEPHERD, P.J., and M. J. KELLY and R. L. TAHVONEN,* JJ.

M. J. KELLY, J. Defendant was convicted by a jury of one count of criminal sexual conduct in the first degree, MCL 750.520b(1)(a); MSA 28.788(2)(1)(a), and two counts of criminal sexual conduct in the second degree, MCL 750.520c(1)(a); MSA 28.788(3)(1)(a). He was subsequently sentenced to concurrent terms in prison of from fifteen to thirty years on the CSC I conviction and from six to fifteen years on each of the two CSC II convictions, with credit for 210 days already served. Defendant appeals from all three convictions as of right. We affirm his convictions for CSC II but reverse his conviction for CSC I.

Defendant's convictions arise out of an incident involving his eight-year-old niece. In December of 1983, defendant was asked to babysit for the complainant and her seven-year-old sister while their parents were absent from the home for approximately an hour and a half. During that time, defendant committed the acts of penetration and contact for which he now stands convicted.

As required under the rape-shield statute, MCL 750.520j; MSA 28.788(10), defendant moved prior to trial for the admission of evidence of certain instances of sexual conduct between complainant and her father. In support of his motion, defendant argued that the evidence was relevant to

---

* Circuit judge, sitting on the Court of Appeals by assignment.

explain the complainant's knowledge of sexual matters and to dispel any inferences of sexual innocence which the jurors might otherwise be inclined to make based on complainant's youth. Defendant pointed out that if the jurors were not apprised of these other instances of sexual abuse, they might convict on the theory that complainant could not know how to describe the acts that allegedly occurred unless they had in fact occurred.

The trial court denied defendant's motion on the ground that evidence of complainant's sexual relationship with a third person was inadmissible under the rape-shield statute and that complainant's knowledge of sexual matters could in this case be proven by alternative methods so that defendant's constitutional rights would not be denied. Complainant had been exposed to pornographic movies explicitly depicting those sexual acts which formed the basis of this criminal prosecution. The trial court allowed testimony to this effect and allowed defense counsel to show the jury segments of two of the films. We conclude that the trial court properly denied defendant's pretrial motion in a manner that preserved his ability to competently present a defense.

This precise issue was addressed in *People v Arenda,* 416 Mich 1, 13; 330 NW2d 814 (1982), reh den 417 Mich 1105 (1983), where the defendant was convicted of three counts of first-degree criminal sexual conduct involving his eight-year-old son. In that case, the defendant sought to introduce evidence of sexual conduct between the son and other persons to explain the son's detailed and accurate knowledge of sexual matters. The Supreme Court held that the trial court properly excluded the evidence under the rape-shield statute without denying the defendant his constitu-

tional rights of confrontation and cross-examination, noting:

> [I]n most of the cases in which the source of the victim's ability to describe a sexual act may be relevant, there are other means by which one can inquire into that source of knowledge without necessarily producing evidence of sexual conduct with others. Counsel could inquire whether the victim had any experiences (*e.g.,* reading a book, seeing a movie, conversing with others, schoolwork or witnessing others engaged in such activity) which aided him or her in describing the conduct that is alleged.

The trial court's ruling on defendant's pretrial motion in this case is entirely consistent with the Supreme Court's ruling in *Arenda.*

In this case, however, we are presented with an issue not presented in *Arenda.* The prosecution in this case introduced into evidence the medical testimony of Dr. Per Lamont Oakey who had examined complainant in March of 1984 in preparation for adoption proceedings. In response to a query regarding his observations during that examination, Dr. Oakey testified:

> *A.* I noticed that there were some scar-like lesions above the pubic area on this patient that we're talking about. I also noticed that there was no hymenal ring when I examined her.
> *Q.* Regarding these scars which were found near the pubic area, is it possible that those could have been caused by a burn by a cigarette lighter?
> *A.* Yes.
> *Q.* Is it possible that those scars could have been as much as two to three months old?
> *A.* Yes.
> *Q.* You state you found no hymenal ring?
> *A.* Hymenal.

*Q.* Is that consistent with there having been
some intrusion in the vagina of an eight-year old
girl?

*A.* Yes.

*Q.* Such as—what type of intrusion, if you could
give me a general idea would it take to obliterate
the hymenal ring?

*A.* Some type of blunt trauma, some type of
penetration with a finger or object. Nothing proba-
bly sharp because it would be too painful I would
think.

*Q.* Would an adult male penis, would that be
able to obliterate the hymenal ring?

*A.* It's possible.

Defense counsel objected and waited until he was
outside the presence of the jury to argue that
defendant should be allowed to rebut Dr. Oakey's
testimony by presenting evidence regarding other
possible sources of scarring and penetration. The
trial court denied defendant's request on the basis
of its earlier ruling.

We are persuaded that once the prosecution
introduced medical evidence to establish penetra-
tion, evidence of alternative sources of penetration
became highly relevant to material issues in dis-
pute. At that point, the admission of evidence
which merely explained complainant's detailed
and accurate sexual knowledge was no longer
sufficient to protect defendant's constitutional
rights of confrontation and cross-examination
since penetration, rather than knowledge, was the
relevant issue. Clearly, one of the prosecution's
two purposes in introducing Dr. Oakey's testimony
was to establish that penetration had occurred.
Defense counsel did cross-examine Dr. Oakey as to
other "non-sexual, ordinary" ways in which a
hymenal ring could be broken in an eight-year-old
girl, but if the jurors viewed Dr. Oakey's testimony

as evidence of sexual penetration, their only recourse was to conclude that defendant was the source of that penetration.

In this case, unlike *Arenda,* allegations of other occurrences of sexual abuse are not merely speculative. Complainant and her sister had been removed from the parental home on the basis of physical and sexual abuse. An investigation by the Department of Social Services resulted in the filing of a petition for termination of parental rights and a hearing on that petition was scheduled one week after the trial conducted in this case. According to the parties' briefs on appeal, the probate court did enter an order terminating parental rights.

In reviewing the issue presented, we have the benefit of a Supreme Court opinion decided and released after trial had been conducted in this case and therefore not available to the trial court. In *People v Hackett,* 421 Mich 338; 365 NW2d 120 (1984), the Supreme Court further interpreted the rape-shield statute as generally excluding "evidence of a rape victim's prior sexual conduct with others, and sexual reputation, when offered to prove that the conduct at issue was consensual or for general impeachment." 421 Mich 347-348. The Court recognized, however, that such evidence might "in certain limited situations" be "required to preserve a defendant's constitutional right to confrontation." 421 Mich 348. Here, defendant did not seek to introduce evidence of sexual assaults upon complainant by her father for the purpose of showing consent or for general impeachment purposes but for the express purpose of rebutting the prosecution's evidence regarding sexual penetration and the inference that defendant was the person responsible. We conclude that defendant should have been allowed to introduce the excluded evidence.

In *People v Hackett,* the Supreme Court set forth specific procedures which should be followed where a defendant seeks to establish the relevancy and admissibility of a rape victim's sexual conduct with others:

> The defendant is obligated initially to make an offer of proof as to the proposed evidence and to demonstrate its relevance to the purpose for which it is sought to be admitted. Unless there is a sufficient showing of relevancy in the defendant's offer of proof, the trial court will deny the motion. If there is a sufficient offer of proof as to a defendant's constitutional right to confrontation, as distinct simply from use of sexual conduct as evidence of character or for impeachment, the trial court shall order an *in camera* evidentiary hearing to determine the admissibility of such evidence in light of the constitutional inquiry previously stated. At this hearing, the trial court has, as always, the responsibility to restrict the scope of cross-examination to prevent questions which would harass, annoy or humiliate sexual assault victims and to guard against mere fishing expeditions. . . . Moreover, the trial court continues to possess the discretionary power to exclude relevant evidence offered for any purpose where its probative value is substantially outweighed by the risks of unfair prejudice, confusion of issues, or misleading the jury. [Citation omitted. 421 Mich 350-351.]

If defendant, on remand, is retried on the CSC I count an in camera hearing shall be conducted after which the trial court shall place appropriate limitations upon the method by which defendant may present the evidence to the jury.

Affirmed in part, reversed in part, and remanded.

R. L. TAHVONEN, J., concurred.

Shepherd, P.J., *(concurring)*. I concur in the result that the conviction for CSC I must be reversed and that the convictions for CSC II should be affirmed. The record clearly indicates that the defendant confessed to those acts that constitute CSC II and therefore I believe that any error mentioned in the majority opinion was harmless in view of the overwhelming evidence against him with respect to those acts. Since defendant did not admit the acts constituting CSC I, the issue of the source of the child's broken hymen was crucial and failure to allow the testimony regarding prior sexual conduct with the victim's father was prejudicial.

Defendant has raised a claim of prosecutorial misconduct and points to a statement in the prosecutor's closing argument where the following remarks were made to the jury:

> I told you it is very hard to be a juror. Well I submit to you if you are convinced beyond a reasonable doubt of Rick Haley's guilt, I'd trade places with any of you in a minute because I couldn't wait to jump over that rail and find him guilty if you are convinced beyond a reasonable doubt. . . .

The prosecutor responded with three arguments. First, that the qualifying language, ". . . if you are convinced beyond a reasonable doubt," mutes any prejudicial effect of the balance of the statement. Secondly, the prosecutor claims he was goaded into these remarks by improper conduct of the defendant's attorney. Finally it was correctly pointed out that there was neither an objection nor a request for a curative instruction.

I am satisfied that there was no reversible error here even though I agree that the remarks were highly improper and might lead to a reversal in

other contexts. The picture of a prosecutor wanting to jump over the rail and take the jury's place is not one that belongs in an American court room. While the prosecutor accurately points out that a trial is not a basket luncheon, neither is it a Star Chamber inquest. What is required is vigorous advocacy coupled with a modicum of restraint, given the fact that the prosecutor is a representative of the law and the agent of the state. I am also convinced that the insertion of the qualifying language can get lost in the heat of the argument leaving the jury with the impression that here is a prosecutor who is so personally convinced of defendant's guilt that he would gladly give up his role of advocate just to join the jurors in voting for conviction. If this can be done in one case, it can be done in all cases and criminal trials would then become a contest between the credibility of the lawyers rather than between the witnesses. See generally *People v Hill,* 258 Mich 79; 241 NW 873 (1932), and *People v Humphreys,* 24 Mich App 411; 180 NW2d 328 (1970).

I also find nothing in the record that would justify the argument that defense counsel goaded the prosecutor into making this remark. Defendant's attorney attacked the credibility of the main witness but that occurs in many cases and the best argument against such an attack is to systematically and methodically point out the evidence which supports the witness' testimony. This approach also has the added advantage of not gratuitously and unnecessarily delivering arguments on appeal to opposing counsel.

I maintain that jurors are usually intelligent enough to see the truth when they are presented with a rational explanation of the facts by a prosecutor in command of the situation and that no useful purpose is served by cluttering the rec-

ord with inflammatory histrionics which run the risk of being held prejudicial.

I find no prejudice here because we are reversing on COUNT I for other reasons and because defendant confessed to the acts constituting CSC II.