# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

RYAN DOUGLAS WHITSON,

        Defendant-Appellant.

UNPUBLISHED
April 13, 2017

No. 330446
Wayne Circuit Court
LC No. 15-004163-01-FC

Before: O'CONNELL, P.J., and GLEICHER and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals by right his conviction, following a jury trial, of three counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b (multiple variables), and two counts of third-degree criminal sexual conduct (CSC-III), MCL 750.520d (multiple variables). The trial court sentenced him to 26 to 50 years' imprisonment for each of the CSC-I convictions, and to 5 to 15 years' imprisonment for each of the CSC-III convictions.[1] We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This case arises from a series of sexual assaults committed by defendant against his daughters, MW and RW, over several years. Both girls testified that defendant's assaults began when they were approximately nine years old, at which time the family was living in Toledo, Ohio. Both girls reported that defendant forced them to engage in vaginal intercourse and fellatio and that defendant's sexual assaults continued after the family moved to Taylor, Michigan in 2011. Neither MW nor RW was aware of the assaults on the other until MW confronted defendant on October 5, 2014. As a result of MW's disclosure, RW came forward and stated that defendant had also molested her for several years.

---

[1] Although the judgment of sentence does not reflect a statutory sentence enhancement, it appears that defendant was sentenced as a second habitual offender under MCL 769.10. The felony information included a habitual offender notice and the sentencing guidelines range identified by the prosecution on the record was the range applicable to that of a second habitual offender with defendant's prior record and offense variable scores.

Before trial, the prosecution endorsed NS as a witness for trial. The prosecution intended to call NS to testify that she had engaged in a sexual relationship with defendant when she was 14 years old. NS was subpoenaed but did not appear for trial. Defense counsel did not object to NS's absence.

Dr. Dena Nazer, a pediatrician at Children's Hospital of Michigan and Kids Talk Children's Advocacy Center, testified that she had performed examinations, including genital examinations, on MW and RW in November 2014 to look for signs of injury or sexually transmitted infections. Dr. Nazer testified that RW's examination results were "normal," and described MW's examination results as follows:

> [S]he had something that we called an indeterminate finding or a finding that there's no consensus on. What that means simply is that it's a finding that supports her disclosure so it's not a finding that we would consider normal. It's not considered not normal on its own but if a child gives a disclosure that sexual abuse happens or happened then it would support their disclosure.

Dr. Nazer stated that a "supportive finding" is not considered either normal or abnormal in the absence of an allegation of sexual abuse.

Before defense counsel began to cross-examine MW, the prosecution informed the trial court that it objected to any efforts by defendant to elicit testimony concerning MW's sexual activity with other partners. Defense counsel initially argued that evidence of MW's sexual activity should be admissible in light of Dr. Nazer's testimony regarding the results of her genital examination; however, counsel later conceded that the exceptions found in the rape-shield statute, MCL 750.520j, did not apply to such evidence. The trial court held that the testimony was precluded by the rape-shield statute.

Defendant was convicted and sentenced as described above. This appeal followed.

## II. MISSING WITNESS

Defendant argues that he was prejudiced by the prosecution's introduction of evidence regarding defendant's past relationship with NS despite the fact that it failed to produce NS, an endorsed witness, at trial. According to defendant, the trial court erred by failing to sua sponte hold an evidentiary hearing to determine whether the prosecution had satisfied its duty under MCL 767.40a(3), and further erred by failing to grant defendant a mistrial as a result of NS's absence, or to issue a missing witness instruction to the jury. We disagree.

To preserve a challenge to the prosecution's failure to produce a witness at trial, the defendant must move for a post-trial evidentiary hearing or a new trial. *People v Dixon*, 217 Mich App 400, 409; 552 NW2d 663 (1996). Additionally, a party claiming error arising from the trial court's failure to properly instruct the jury "must object or request a given jury instruction to preserve the error for review." *People v Sabin (On Second Remand)*, 242 Mich App 656, 657; 620 NW2d 19 (2000). Defendant did not raise this issue in the trial court by moving for a post-trial evidentiary hearing or a new trial, and did not object to the trial court's instruction to the jury concerning the missing witness or request that an additional instruction be

given. Consequently, this issue is unpreserved and reviewed for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Even where plain error is apparent from the record, the error only warrants reversal when it results in the conviction of an innocent defendant or "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." *Id*. (internal quotation marks omitted). When a party fails to request or object to a specific jury instruction, relief is only warranted "when necessary to avoid manifest injustice." *Sabin (On Second Remand)*, 242 Mich App at 657.

If the prosecution endorses a witness under MCL 767.40a(3), it is required to exercise due diligence to secure that witness's presence at trial. *People v Duenaz*, 306 Mich App 85, 104; 854 NW2d 531 (2014). The prosecution's failure to produce an endorsed witness may be excused upon a showing of due diligence. *People v Eccles*, 260 Mich App 379, 388; 677 NW2d 76 (2004). If the trial court determines that the prosecution failed to satisfy its duty in this regard, it may be appropriate to instruct the jury that "it may infer that the missing witness's testimony would have been unfavorable to the prosecution's case." *Id*. See also *People v Perez*, 469 Mich 415, 420-421; 670 NW2d 655 (2003) (finding that a missing witness jury instruction in response to a violation of MCL 767.40a is sometimes, although not always, appropriate and that the propriety of such an instruction depends on the facts of the case).

It is undisputed that the prosecution endorsed NS in its witness list and intended to call NS as a witness regarding her sexual relationship with defendant when she was 14 years old. Christina Meach, MW and RW's mother, testified regarding defendant's relationship with NS, and police officer Kenneth May testified about a Toledo police report that referred to defendant's relationship with NS. The prosecution was therefore obliged to exercise due diligence to secure NS's presence at defendant's trial. *Eccles*, 260 Mich App at 388. The reason for NS's absence is not apparent from the record, nor is the extent of the prosecution's efforts to secure her presence. In regard to these efforts, Officer May testified that he spoke with NS on several occasions and that she was subpoenaed to appear. It is unclear at what point the prosecution became aware that NS would not comply with the subpoena. The only testimony concerning NS's failure to appear was the following exchange between the prosecution and Officer May on the last day of defendant's three-day trial:

> *Q*. . . . Was she subpoenaed to be here?
>
> *A*. She was.
>
> *Q*. Okay. Did she appear?
>
> *A*. I have not seen her.
>
> *Q*. Okay, have you been able to contact her?
>
> *A*. No, I have not.

As an initial matter, it is not clear from the record that the prosecution failed to exercise due diligence to secure NS's presence or deliberately misled the trial court. Defendant's suggestion that the prosecution introduced evidence concerning NS while knowing that she

-3-

would not testify at trial is completely unsupported by the record. We will not presume that an attorney violated his or her duty of candor to the tribunal in the absence of evidence to the contrary. See *People v Dunbar*, 463 Mich 606, 617 n 3; 625 NW2d 1 (2001), overruled in part on other grounds by *People v Jackson*, 483 Mich 271; 769 NW2d 630 (2009).

More importantly, even if the record supported the conclusion that the prosecution failed to exercise due diligence to produce NS at trial, such a finding would not result in undue prejudice under the circumstances of this case. Contrary to defendant's assertion on appeal, the trial court did, in fact, issue a missing witness instruction to the jury, instructing the jury that the prosecution was responsible for producing NS and that it could infer from NS's absence that her testimony would have been unfavorable to the prosecution. "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). Thus, by giving an appropriate jury instruction, the trial court minimized any prejudice that resulted from NS's nonappearance. And while defendant argues that he was prejudiced by his inability to cross-examine NS, he has not explained why the missing witness instruction was an inadequate remedy in this case. Therefore, defendant has failed to demonstrate that his substantial rights were affected.

## III. APPLICATION OF RAPE-SHIELD STATUTE

Defendant also argues that the trial court erred by finding that he was precluded by the rape-shield statute, MCL 750.520j, from inquiring into MW's sexual activities with others. Defendant argues that the trial court should not have excluded that evidence because Dr. Nazer testified that her physical examination of MW's genital region resulted in an "indeterminate finding" that could be supportive of sexual abuse. Consequently, evidence regarding other sexual activities was admissible as rebuttal evidence to provide an alternative explanation for Dr. Nazer's findings. We conclude without deciding the issue that any error that arose from the exclusion of this evidence was harmless.

We review a trial court's rulings regarding the admissibility of evidence for an abuse of discretion. *People v McLaughlin*, 258 Mich App 635, 649; 672 NW2d 860 (2003). "A trial court abuses its discretion when it chooses an outcome that is outside the range of reasonable and principled outcomes." *People v Green*, 313 Mich App 526, 531; 884 NW2d 838 (2015), quoting *People v Orr*, 275 Mich App 587, 588-589; 739 NW2d 385 (2007). A preserved error in the admission or exclusion of evidence only warrants reversal when it appears "more probable than not that the alleged error affected the outcome of the trial in light of the weight of the properly admitted evidence." *McLaughlin*, 258 Mich App at 650.

MCL 750.520j provides that "[e]vidence of specific instances of the victim's sexual conduct . . . shall not be admitted" in CSC cases, subject to two statutory exceptions. *Duenaz*, 306 Mich App at 91. One of those exceptions is found in MCL 750.520j(1)(b), i.e. that "[e]vidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease," may be admitted if it is material to a fact at issue and its inflammatory or prejudicial effect does not outweigh its probative value. *Duenaz*, 306 Mich App at 91. A defendant who wishes to introduce evidence under this exception is required to file a written motion and offer of proof within 10 days after the arraignment on the information. MCL 750.520j(2); *McLaughlin*, 258 Mich App at 653. Here, defendant failed to provide such

-4-

notice.  Although not dispositive as to the admissibility of the evidence, defendant's failure to provide advance notice weighed in favor of exclusion.  *McLaughlin*, 258 Mich App at 654.

Although the statutory language refers only to evidence concerning "semen, pregnancy, or disease," this Court has held that specific instances of sexual activity can also be introduced "to show the origin of a *physical condition* when evidence of that condition is offered by the prosecution to prove one of the elements of the crime charged provided the inflammatory or prejudicial nature of the rebuttal evidence does not outweigh its probative value."  *People v Shaw*, 315 Mich App 668, ___; ___ NW2d ___ (2016); slip op at 6 (emphasis added).  In *Shaw*, a physician testified that he discovered "extensive hymenal changes" and a "chronic anal fissure" during his examination of the complainant.  *Id*. at ___; slip op at 5-6.  A majority of the Court determined that defense trial counsel had rendered ineffective assistance in failing to present testimony of the complainant's boyfriend, and that his testimony would have been admissible to provide an alternative explanation for the hymenal changes and anal fissure described by the physician.  *Id*. at ___; slip op at 6.

In reaching this conclusion, the Court in *Shaw* cited to *People v Mikula*, 84 Mich App 108; 269 NW2d 195 (1978), and *People v Haley*, 153 Mich App 400; 395 NW2d 60 (1986).  In *Mikula*, the majority opinion offered the following rationale:

> Defendant argues that the intent of [MCL 750.520(j)(1)(b)] is to permit an accused to introduce specific instances of the complainant's sexual activity to show the origin of a physical condition offered as circumstantial evidence of defendant's guilt.[ ]  The prosecution contends that the specific physical condition here involved is not included in the statute and the proffered evidence was, therefore, properly excluded.  We are persuaded that the defendant's interpretation of the statute is correct.
>
> It is well settled that where the prosecution substantiates its case by demonstrating a physical condition of the complainant from which the jury might infer the occurrence of a sexual act, the defendant must be permitted to meet that evidence with proof of the complainant's prior sexual activity tending to show that another person might have been responsible for her condition. . . .  The question in this case is whether the Legislature intended to retain that rule only for the conditions expressly included in the statute to the exclusion of other physical conditions.  We think not.  We are persuaded that there is no rational distinction between the evidence expressly allowed under the statute and that offered in this case.
>
> Certainly proof of the origin of the condition found in this case has no more potential for harassment of a complainant than proof of the origin of one of the conditions expressly included in the statute.  Moreover, the prosecution offered the evidence of the condition found in this case for the same purpose for which evidence of a condition included in the statute would be introduced, I. e. to prove the guilt of the accused.  The introduction of evidence of the origin of the condition to rebut the inference of guilt is equally important to the defense

whether the condition be one of those included in the statute or another condition similarly probative of one of the elements of the crime.

> We conclude, therefore, that the Legislature intended that evidence of specific instances of sexual activity is admissible to show the origin of a physical condition when evidence of that condition is offered by the prosecution to prove one of the elements of the crime charged provided the inflammatory or prejudicial nature of the rebuttal evidence does not outweigh its probative value. [*Mikula*, 84 Mich App at 113-114 (citations and footnote omitted).]

*Shaw*'s endorsement of *Mikula* has now made it precedential. MCR 7.215(J)(1). Yet, because the holding in *Mikula* on its face appears not to be consistent with the text of MCL 750.520j(1)(b), we will dig a bit deeper into the rationale that we believe may underlie its conclusion.

The majority in *Shaw* cited secondarily to *Haley*, noting that *Haley* held that "once the prosecution introduced medical evidence to establish penetration, evidence of alternative sources of penetration became highly relevant to material issues in dispute." *Haley*, 153 Mich App at 405-406. The Court in *Haley* further concluded that the "admission of evidence which merely explained complainant's detailed and accurate sexual knowledge was no longer sufficient to protect defendant's constitutional rights of confrontation and cross-examination since penetration, rather than knowledge, was the relevant issue." *Haley* cited to *People v Hackett*, 421 Mich 338; 365 NW2d 120 (1984), in which our Supreme Court rejected constitutional challenges to the admission of evidence of the complainants' prior sexual conduct, but nonetheless noted that "in certain limited situations, such evidence may not only be relevant, but its admission may be required to preserve a defendant's constitutional right to confrontation." *Id*. at 348.

The Court in *Hackett* noted that "[t]he [rape-shield] statute and its parallel provisions in the Michigan Rules of Evidence, MRE 404(a)(3), constitute a policy determination, that sexual conduct or reputation *as evidence of character and for impeachment*, while perhaps logically relevant, is not legally relevant." *Id*. at 346 (emphasis added). Further, however, "[i]t is equally clear that while the extent of cross-examination is within the discretion of the trial court there is a dimension of the Confrontation Clause that guarantees to defendant a reasonable opportunity to test the truth of a witness' testimony." *Id*. at 347.

Placing the rape-shield statute in context, the Court explained that it was designed to insulate a complainant from character and general credibility challenges, but that those protections do not necessarily preclude the admission of evidence regarding other sexual conduct where relevant to issues presented in a case. Moreover, where relevant to such issues, admission of the evidence might be required in order to protect the defendant's constitutional right to confrontation:

> By enacting a general exclusionary rule, the Legislature recognized that in the vast majority of cases, evidence of a rape victim's prior sexual conduct with others, and sexual reputation, when offered to prove that the conduct at issue was consensual or for general impeachment is inadmissible. *People v. Arenda*, [416

Mich. 1, 10, 330 N.W.2d 814 (1982)]. The first purpose is simply a variation of character evidence as circumstantial evidence of conduct. The second is a collateral matter bearing only on general credibility as to which it has been held that cross-examination may be denied . . . . The fact that the Legislature has determined that evidence of sexual conduct is not admissible as character evidence to prove consensual conduct or for general impeachment purposes is not however a declaration that evidence of sexual conduct is never admissible. We recognize that in certain limited situations, such evidence may not only be relevant, but its admission may be required to preserve a defendant's constitutional right to confrontation. For example, where the defendant proffers evidence of a complainant's prior sexual conduct for the narrow purpose of showing the complaining witness' bias, this would almost always be material and should be admitted. . . . Moreover in certain circumstances, evidence of a complainant's sexual conduct may also be probative of a complainant's ulterior motive for making a false charge. . . . Additionally, the defendant should be permitted to show that the complainant has made false accusations of rape in the past. [*Hackett*, 421 Mich at 347-348 (citations omitted).]

We therefore conclude that the proscriptions of the rape-shield statute are implicated when evidence of other sexual conduct is offered for purposes of challenging a complainant's character or general credibility, but are not necessarily implicated when the evidence is otherwise admissible for a proper purpose, and that the underpinnings of that admissibility lie in the confrontation clause. See also *People v Sharpe*, ___ Mich App ___; ___ NW2d ___ (2017) (Docket Nos. 332879, 333872), slip op at 8 ("It is axiomatic that evidence that is inadmissible for one purpose may nonetheless be admissible for another purpose."). Rather, the court must then balance the probative value and prejudicial effect of the evidence.[2] We note that "[t]he standard for excluding evidence on the basis of prejudice is more stringent under MCL 750.520j than under MRE 403," because the probative value of evidence of other sexual conduct must only be "outweighed" by its prejudicial and inflammatory effect on the jury, rather than "substantially outweighed" as in MRE 403. See *id.*, slip op at 5, citing *People v Adair*, 452 Mich 473, 481; 550 NW2d 505 (1996). We further note that, in providing examples of situations where such evidence would be admissible, the Supreme Court in *Hackett* did not expressly reference admissibility for purposes of providing an alternative explanation for a physical condition. However, the Court in *Hackett* did not list its examples in an all-inclusive fashion. Instead, the Court left the determination of admissibility to the discretion of the trial court:

The determination of admissibility is entrusted to the sound discretion of the trial court. In exercising its discretion, the trial court should be mindful of the significant legislative purposes underlying the rape-shield statute and should

---

[2] The Court in *Hackett* described the task associated with determining whether evidence of other sexual conduct infringes on a defendant's right of confrontation as one of "[b]alancing the potential prejudicial nature of this evidence, in view of the legislative purposes behind the rape-shield law, against the . . . probative value of the evidence."

always favor exclusion of evidence of a complainant's sexual conduct where its exclusion would not unconstitutionally abridge the defendant's right to confrontation. [*Hackett*, 421 Mich at 349.]

The Court further outlined the procedure to be followed in the trial court for assessing the admissibility of such evidence:

> The procedure to be employed by the trial court in evaluating the admissibility of evidence of the complainant's prior sexual conduct is found in the rape-shield statute's provision for *in camera* hearings. [*Id.*, 421 Mich at 349, quoting MCL 750.520j(2) ("*The court may order an in camera hearing to determine whether the proposed evidence is admissible under subsection (1).*").]

Further:

> Whether we construe this provision to permit the extension of *in camera* hearings to include consideration of evidence outside the scope of subsection (1) where a defendant's confrontation right has been implicated,[ ] or whether we ground the broadened scope of such hearings on this Court's constitutional authority to establish rules of practice and procedure,[ ] we conclude that the hearing procedure will best accomplish the required balancing. A hearing held outside the presence of the jury to determine admissibility promotes the state's interests in protecting the privacy rights of the alleged rape victim while at the same time safeguards the defendant's right to a fair trial. Furthermore, this procedure establishes a record of the evidence for appellate review of the trial court's ruling.
>
> The defendant is obligated initially to make an offer of proof as to the proposed evidence and to demonstrate its relevance to the purpose for which it is sought to be admitted. Unless there is a sufficient showing of relevancy in the defendant's offer of proof, the trial court will deny the motion. If there is a sufficient offer of proof as to a defendant's constitutional right to confrontation, as distinct simply from use of sexual conduct as evidence of character or for impeachment, the trial court shall order an *in camera* evidentiary hearing to determine the admissibility of such evidence in light of the constitutional inquiry previously stated. At this hearing, the trial court has, as always, the responsibility to restrict the scope of cross-examination to prevent questions which would harass, annoy or humiliate sexual assault victims and to guard against mere fishing expeditions. . . . Moreover, the trial court continues to possess the discretionary power to exclude relevant evidence offered for any purpose where its probative value is substantially outweighed by the risks of unfair prejudice, confusion of issues or misleading the jury. . . . We again emphasize that in ruling on the admissibility of the proffered evidence, the trial court should rule against the admission of evidence of a complainant's prior sexual conduct with third persons unless that ruling would unduly infringe on the defendant's constitutional right to confrontation. [*Id.*, 421 Mich at 349-351 (citations omitted).]

-8-

It appears from the record that the trial court, in exercising its discretion to preclude the proffered evidence, did not follow the procedure outlined by the Court in *Hackett*. This does not mean that the trial court necessarily erred by excluding the evidence. However, it does not appear that the trial court or the parties addressed the issue in terms of the confrontation clause or followed the procedure outlined in *Hackett* for offers of proof and in camera hearings. We are therefore unable on the current record to determine whether the trial court abused its discretion in excluding the evidence.

Nonetheless, we conclude that any error in excluding the evidence in this case was harmless. The probative value of the excluded evidence was not as significant as that at issue in *Shaw*. The *Shaw* Court opined that the complainant's ongoing sexual relationship at the time of her physical examination was highly relevant because the physician "essentially testified that the hymenal changes were consistent with those of either a sexually active adult woman or an abused child." *Id*. Thus, without evidence of the complainant's sexual relationship with her boyfriend, "there was no likely explanation, other than [the] defendant's guilt," to explain the physical condition reported by the physician. *Id*. By contrast, Dr. Nazer's testimony regarding the implications of her findings was far less definitive. Dr. Nazer reached an "indeterminate finding" regarding the condition of MW's hymen, and explained that while such a finding is "supportive" of the complainant's disclosure, it is not considered abnormal in the absence of allegations of sexual abuse. The natural implication of Dr. Nazer's testimony is that the results of MW's medical examination were inconclusive regarding whether MW had engaged in any sexual activity that would have compromised the condition of her hymen—regardless of whether that activity occurred with defendant or others.

Moreover, it is improbable that the outcome of the trial would have been different if defendant had been allowed to introduce evidence that MW was sexually active with others before she was examined by Dr. Nazer. Although MW did not describe the sexual encounters that occurred in Taylor in great detail, she unequivocally testified that defendant engaged in vaginal intercourse with her at their house. She also stated that when they left the house together, defendant would drive to isolated locations and make her put his penis in her mouth. The testimony of a complainant in a CSC prosecution need not be corroborated. MCL 750.520h; *People v Brantley*, 296 Mich App 546, 551; 823 NW2d 290 (2012). Moreover, the jury also convicted defendant of the CSC-I charges stemming from RW's accusations, regardless of the fact that Dr. Nazer reported that RW's examination results were normal. Thus it does not appear that the jury placed disproportionate weight on Dr. Nazer's indeterminate finding or the lack of evidence of other sexual activity by MW.

Affirmed.

/s/ Peter D. O'Connell
/s/ Elizabeth L. Gleicher
/s/ Mark T. Boonstra